UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JANET W.,

           Plaintiff,

    v.                                              **DECISION AND ORDER**

                                                               23-CV-1020S

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

      1.      Plaintiff Janet W.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income under Title XVI of the Act for determination of her continued supplemental security income benefits following receiving disability coverage in her childhood. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her application with the Social Security Administration on May 21, 2019, for redetermination of disability as an adult. Plaintiff alleged disability from her birth in 1999 due to asthma, migraine headaches, obesity, back pain, complaints of shoulder pain, learning disorder, anxiety disorder, dysthymic disorder, and post-traumatic stress disorder (or "PTSD"). Her application was denied, she was deemed no longer disabled, and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3. On October 8, 2020, ALJ Stephen Cordovani held a telephonic hearing at which Plaintiff representing herself testified as did Vocational Expert Michael Smith. (R.[2] at 39-81.)

4. Plaintiff was 19 years old when the redetermination began. She has a limited education having received special education support while in school. (R. at 21-22, 27.) Plaintiff's educational record showed deficits in reading and writing, and math with functioning below the average range. (R. at 22; 272-79, 281-98, 299-303.) She attended community college until the COVID pandemic. (R. at 66-70; see R. at 26.) She had no relevant past work. (R. at 21, 27.)

5. The ALJ scheduled a supplemental hearing on May 25, 2021, but Plaintiff did not appear or respond to the ALJ's later notice to show cause. (R. at 188-90.) The ALJ concluded that Plaintiff thus waived a further hearing. (R. at 18-19.)

6. The ALJ then considered the case *de novo* and, on August 4, 2021, issued a written decision denying Plaintiff's application for continued benefits. After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action challenging the Commissioner's final decision.[3] (Docket No. 1.)

7. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 6, 12.) Plaintiff filed her Response on May 15, 2024. (Docket No. 13.) This Court then took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion will be granted, Defendant's Motion will be denied, and the case will be remanded for further proceedings.

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's August 4, 2021, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

2

8. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

9. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

3

10.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. § 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

11.    The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

12.    Although the claimant has the burden of proof at the first four steps, the Commissioner has the burden of proof at the fifth and final step. See Yuckert, 482 U.S. at 146 n.5. The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the

4

national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

13.    The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff never engaged in substantial gainful activity.  At Step Two, the ALJ found that Plaintiff had the following severe impairments: asthma and migraine headaches.  (R. at 21.)

14.    Among the other conditions the ALJ considered either singly or in combination Plaintiff's claimed mental impairments of learning disorder, anxiety, dysthymic disorder, and PTSD, concluding that these impairments were not severe because they caused only minimal limitation in her ability to perform basic mental work activities.  (R. at 22.)  The ALJ also considered Plaintiff's broad functional areas of mental functioning as set out in Social Security regulations' "paragraph B" criteria and found that Plaintiff had mild limitations in all four functional areas, that is understanding information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  As a result, the ALJ deemed Plaintiff's alleged mental disorders were not severe.  (R. at 23-24.)

15.    At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Specifically, the ALJ noted that Plaintiff continued to have migraines but her symptoms improved with medication and found that the intensity and frequency of her headaches did not meet the relevant listing.  (R. at 24.) See 20 C.F.R. Part 404, Subpt. P, Appx. 1, Listing 11.02B.

16. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of work at all exertional levels but with the following nonexertional limitations. First, the ALJ found that Plaintiff should not be exposed to extreme heat, cold, wetness, or humidity. The ALJ next noted that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. Further, the ALJ found that Plaintiff should not be exposed to loud noises and have no exposure to flashing lights or bright lights (defined as light brighter than normal retail setting, office lighting, or the outdoors). (R. at 25.)

17. At Step Four, the ALJ found that Plaintiff had no past relevant work. (R. at 27.) At Step Five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. at 27-28.) The ALJ did so by posing hypotheticals to the Vocational Expert of a claimant sharing Plaintiff's age, education, work experience, and RFC performing unskilled light work. The Expert opined that this hypothetical claimant could perform such representative jobs as a photocopy machine operator, office helper, and mail clerk. Accordingly, the ALJ found that Plaintiff was not disabled. (R. at 28.)

18. Plaintiff first argues that the ALJ failed to develop the record for a self-represented claimant with known mental and cognitive impairments. (Docket No. 6, Pl. Memo. at 9-11.) She now claims the combination of her psychological limitations and her self-representation triggered the ALJ's heightened duty to develop this record. Reviewing the evidence, this Court finds that the ALJ met his affirmative obligation in developing this record.

19. The ALJ has a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Lamay v. Comm'r, 562 F.3d 503, 509 (2d Cir. 2009); Drake v. Astrue, 443 F. App'x 653, 656 (2d Cir. 2011); 20 C.F.R. § 416.912(b). This duty is a threshold requirement and "the ALJ must develop the record prior to assessing whether a claimant is disabled." Blackman v. Berryhill, No. 1:16-CV-00869-HBS, 2018 WL 3372963, at *2 (W.D.N.Y. July 11, 2018). In developing the record, the ALJ must make a "reasonable effort" to obtain evidence by making an initial request to a source and if necessary, one follow up request. Jackson v. Kijakazi, 588 F. Supp. 3d 558, 584-85 (S.D.N.Y. 2022) (quotation omitted; citing cases); 20 C.F.R. § 416.912(b)(1)(i). While the ALJ also has the authority to subpoena medical evidence on behalf of the claimant, the ALJ first must request these records through ordinary means. Vellone v. Saul, No. 20-CV-261 (RA) (KHP), 2021 WL 319354, at *7 (S.D.N.Y.), adopted, 2021 WL 2801138 (S.D.N.Y. July 6, 2021); Jackson, 588 F. Supp. 3d at 584 n. 22. One court observed that a subpoena to a medical source is "more than the ALJ was required to do." Gonell De Abreu v. Colvin, No. 16-cv-4892 (BMC), 2017 WL 1843103, at *5 (E.D.N.Y. May 5, 2017).

20. For "when the claimant is unrepresented, the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (internal quotation marks and citations omitted). Furthermore, "the ALJ's duty to develop the record is also heightened where mental conditions are present." Martin v. Colvin, No. 1:15-CV-01067 (MAT), 2017 WL 370809, at *3 (W.D.N.Y. Jan. 26, 2017) (citations omitted).

21.     During the administrative proceedings before the ALJ Plaintiff represented herself.  In scheduling the administrative hearing, the agency and the ALJ repeatedly notified Plaintiff of her right to representation and its importance during the pending proceeding.  (R. at 126-37, 139-52, 158-69.)

22.     At the commencement of the October 8, 2020, hearing, the ALJ excused Plaintiff's mother (also her representative payee) from the hearing with leave to have her testify later if Plaintiff thought that she had pertinent information.  (R. at 41-42; see R. at 104, 125, 402.)

23.     The ALJ then confirmed Plaintiff's understanding of her right to representation, asking if she wanted to represent herself or seek an adjournment to obtain representation and readvising her of her right.  (R. at 44-45; see R. at 18, 130-36, 158-64.)  Plaintiff replied that she could not retain representation but would proceed with the hearing representing herself.  (R. at 45-46.)

24.     Plaintiff proceeded to testify knowledgeably about her medical condition and treatment.  (R. at 47-72.)  She initially claimed learning disability, anxiety, and depression as mental impairments.  (R. at 51, 71, 88.)  She testified that her mind tended to race that she could not concentrate and she had what she termed bad anxiety and depression.  Plaintiff also complained of migraines and "horrible headaches."  (R. at 51.)  She, however, did not elaborate on her learning disability.

25.     The ALJ reviewed the record from treating sources Plaintiff identified in her testimony:  neurologist Peterkin Lee-Kwen, M.D., from Southtowns Neurology and Dent Neurologic Center (hereinafter "Dent") for treatment of her migraines; Baker Victory Services (also known as OLV Human Services, hereinafter "BVS") and OLV Family Care

Center for treatment of her anxiety and depression. (R. at 52, 61-62, 64-66, 80.) The ALJ noted gaps in the treatment record from these sources that precluded rendering a decision at the conclusion of that hearing. (R. at 52-53, 62-66, 73, 80.) The ALJ then obtained Plaintiff's permission to obtain supplemental records and held the record open for that supplementation. (R. at 64-66, 72-73; see R. at 18.)

26. Plaintiff testified that she was counseled by Andrea Massabini, LCSW-R, at BVS for five years until the counselor's promotion in August 2020. The record, however, does not contain Ms. Massabini's treatment notes.

27. After Ms. Massabini's promotion, Plaintiff refused to see another counselor at BVS, believing that Ms. Massabini was the only helpful counselor there who understood and was familiar with Plaintiff and her life. (R. at 62-63.) Plaintiff said that other counselors at BVS appeared dismissive of her, therefore she did not trust them to assume her case. (R. at 63.)

28. Near the conclusion of the hearing, ALJ asked Plaintiff whether she wanted her mother to testify or if Plaintiff believed that she adequately explained herself. Plaintiff declined to call her mother as a witness and the ALJ confirmed this choice. (R. at 79.)

29. On March 9, 2021, the ALJ noticed a supplemental hearing for May 25, 2021, warning that if Plaintiff did not attend her request for a hearing may be dismissed. (R. at 170.) The ALJ also stated the method for providing additional evidence, including seeking subpoenas from the ALJ. (R. at 171-72.)

30. Meanwhile, after closing the hearing, the ALJ requested records from BVS and the other providers. BVS submitted Plaintiff's intake, discharge summaries, and

treatment plans, but not Plaintiff's counseling notes from longtime counselor LCSW Massabini or other counselors. (R. at 388-89, 605-15, 647-61; cf. R. at 396).

31.  On March 25, 2021, the agency contacted Plaintiff and told her that the ALJ received the medical record from BVS for counseling from October 1, 2020, to March 25, 2021. (R. at 396; see R. at 601-16.) Agency staff member A. Pugh noted that Plaintiff, aware of the supplemental hearing, consented to a telephone conference but said that she was "very nervous at the last hearing." Plaintiff then asked if her mother could serve as her representative. The staffer replied with the rules for representation, warning that the ALJ may ask her mother's knowledge of Social Security disability rules before allowing her to serve as a representative. The staffer also said that if her mother represented her daughter, Plaintiff's mother could not be a witness. (R. at 396.)

32.  BVS submitted to the ALJ Plaintiff's January 23, 2017, initial Individual Action Plan Review listing her goals at the start of her treatment and noting her diagnoses without commentary. (R. at 605-06, 608.) BVS also included an Initial Psychiatric Assessment and Discharge Summary dated March 31, 2017, which indicated that after providing Plaintiff with trauma therapy she successfully completed her goals, did not endure trauma symptoms, and had a decrease in her depression and anxiety. (R. at 611-15.) These documents were signed by LCSW Massabini but did not contain her treatment or counseling notes. (R. at 608, 615.)

33.  On April 20, 2021, the ALJ made a second request for BVS to produce records, then from December 2, 2020, to present. (R. at 644-46.) BVS then responded by submitting the November 5, 2020, Treatment Plan and Comprehensive Assessment primarily to address Plaintiff's PTSD, noting that her depression and anxiety had

increased.  (R. at 647-51, 653-61.)  LCSW Massabini also signed this treatment plan without submitting her counseling notes.  (R. at 650.)  There is no discussion of the subsequent treatment or presentation of any discharge summary in the assessment.

34.    Meanwhile, the ALJ received additional records from Dent, Dr. Lee-Kwen, and OLV Family Care Center.  (R. at 391-92, 555-624.)  Plaintiff has not claimed any further gaps in the record following supplemental production from these treating sources.

35.    On April 1 and 27, 2021, the agency sent Plaintiff reminders of the May 25, 2021, supplemental hearing with an acknowledgement form for Plaintiff to complete and return.  (R. at 183-87.)  On April 5, 2021, Plaintiff submitted her acknowledgment form declaring her availability for the May 25 telephonic conference.  (R. at 182; see R. at 400.)

36.    Plaintiff, however, failed to appear at the May 25 hearing.  On June 4, 2021, the ALJ then issued to Plaintiff a notice to show cause if she still wanted a hearing.  (R. at 188.)  With no response from Plaintiff, the ALJ concluded that she waived a further hearing.  (R. at 18-19.)

37.    On September 9, 2021, Plaintiff represented by her mother requested that the Appeal Council review the ALJ's decision.  (R. at 191; see R. at 37.)

38.    Plaintiff then retained counsel for her appeal.  Counsel requested additional time from the Appeals Council.  (R. at 30-33.)  On June 28, 2023, the Appeals Council granted Plaintiff's request for extension of time.  (R. at 30-34.)  Plaintiff, however, did not supplement the record.

39.    Thus, the issue here is whether the ALJ made reasonable efforts to develop the record for a young claimant representing herself with alleged mental limitations.

40. The Second Circuit in <u>Drake</u> found that the ALJ in that case exercised reasonable efforts in obtaining that claimant's records from a hospital despite submission of incomplete records for that claimant. The Court concluded there that the hospital's failure did not mean that the ALJ breached the duty to develop the record because the ALJ requested those records "and nothing in the record suggest[ed] that the ALJ should have known" that the response was incomplete. <u>Drake</u>, 443 F. App'x at 656; <u>see also</u> <u>Blackman</u>, 2018 WL 3372963, at *2-3 (found that summaries of that claimant's treatment provided "a comprehensive overview of plaintiff's mental health progress of the course of his treatment," thus fulfilling the duty to develop the record).

41. Here, this Court holds that the ALJ made reasonable efforts to obtain Plaintiff's records from BVS while she represented herself. <u>Drake</u>, 443 F. App'x at 656. First, during the hearing, the ALJ recognized the gaps in BVS's records, offered to collect supplemental materials for Plaintiff from BVS, kept the case open for supplementation, and made multiple requests for supplementation from BVS. (R. at 62-66, 73, 80; <u>see</u> R. at 387-90, 393-94, 396.) The ALJ, however, received only admission and discharge records from BVS and BVS did not provide notes from Plaintiff's counseling sessions. The ALJ then recognized the deficiency in BVS's response as well as Plaintiff's vulnerable position while representing herself and repeatedly sought records from BVS. (R. at 378-90, 644-46.)

42. The ALJ also noted gaps in the record from Plaintiff's other providers and obtained supplemental evidence from them. The ALJ thus adequately fulfilled his duty to develop the record by obtaining medical records from Dent, OLV, and Dr. Lee-Kwen.

43. The ALJ also satisfied his duty to develop the record from BVS by engaging in the collection effort from BVS. The ALJ twice asked for materials from BVS but only received admission and discharge summaries without underlying counseling records. Moreover, the agency updated Plaintiff on the status of BVS's production. (R. at 396.) From this production, it is unclear to this Court whether these counseling records exist.

44. Social Security regulations merely required the ALJ make "every reasonable effort" to help the self-represented claimant obtain records. 20 C.F.R. § 416.912(b). The ALJ here made every reasonable effort by repeatedly asking records from BVS. The ALJ requested the records with nothing therein suggesting that the ALJ should have known BVS's response was incomplete. See Drake, 443 F. App'x at 656.

45. This differs from the Second Circuit's decision in Atkinson v. Barnhart, where that ALJ did not adequately fulfill the duty to develop that record by failing to obtain hospital records from one hospital while obtaining records from another. 87 F. App'x 766, 768 (2d Cir. 2004). Here, the ALJ repeatedly requested relevant materials from BVS.

46. In the March 9, 2021, notice to Plaintiff for the supplemental hearing, the ALJ informed her of the right to request a subpoena to obtain additional records. But Plaintiff never made that request. (R. at 172.) This Court further notes that Plaintiff later obtained counsel for her appeal to the Appeals Council but this counsel did not submit additional evidence, challenge treating sources' supplementation, or request a remand to the ALJ to issue a subpoena.

47. Therefore, Plaintiff's Motion for Judgment on the Pleadings on this ground is denied and Defendant's Motion is granted.

48.     Plaintiff next argues that the ALJ's Step Three finding as to her migraines was not supported by the record, warranting remand.  Plaintiff bears the burden at Step Three of the sequential analysis to establish that her migraines met or medically equaled the requirements of the relevant Listing 11.02B. E.g., Joe N. v. Comm'r, No. 19-CV-1384S, 2021 WL 4316556, at *4 (W.D.N.Y. Sept. 23, 2021) (Skretny, J.) (quoting Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y.)), adopted, 614 F. Supp. 2d 252 (N.D.N.Y. 2009); see 20 C.F.R. § 416.920; Yuckert, 482 U.S. at 146 n.5.

49.     The ALJ found at that step that Plaintiff's migraine headaches improved with medication and that Plaintiff failed to establish the frequency or intensity of her headaches to meet a neurological disorder under Listing 11.00.  But the ALJ noted the frequency of her headaches.  (R. at 24, 26-27.)

50.     Primary headache disorders, including migraine headaches, are not a listed impairment but may equal a Listing.  The agency noted that "while uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizure), and [the agency] may find that his or her [medically determinable impairment(s)] medically equals the listing." Social Security Ruling (SSR) 19-4p, 2019 WL 4169635, at *2, 7 (Aug. 26, 2019). The most relevant Listing to Plaintiff's migraines is Listing 11.02B which describes Dyscognitive Seizures.  See id.  That Listing requires that symptoms occur at least once a week for at least three consecutive months despite adherence to prescribed treatment. 20 C.F.R. Part 404, Subpt. P, Appx. 1, Listing 11.02B; SSR 19-4p, 2019 WL 469635, at *7.

51. To evaluate the headaches, the ALJ considers

"a detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations)."

SSR 19-4p, 2019 WL 469635, at *7.

52. Plaintiff argues that she met this requirement by proof from Dent from July to September 2020 that she had one headache a week, and in March 2021 that she had two headaches a week. (R. at 573, 577, 594-95, 640.)

53. Before seeking treatment at Dent, on October 7, 2019, Plaintiff complained to Dr. Lee-Kwen of frequent headaches that ibuprofen did not alleviate. Dr. Lee-Kwen prescribed amitriptyline. (R. at 594-95; see R. at 26.)

54. In 2020, Plaintiff then sought treatment at Dent, where Shivang Joshi, M.D., and Kelly Stockdill, NP, noted that Plaintiff had frequent headaches for over seven years, complaining of suffering twelve headache days per month. (R. at 577, 581; see R. at 26.)

55. Plaintiff reported to Dr. Joshi on June 12, 2020, that her headaches involve photophobia, phonophobia, osmophobia, and nausea, causing her to retreat to a dark, quiet room and lying down to stabilize the headache. The doctor noted that Plaintiff continued taking amitriptyline. (R. at 581.) The ALJ acknowledged these findings. (R. at 26.)

56. On July 24, 2020, Plaintiff told NP Stockdill that the frequency of her headaches decreased to once per week with the headaches involving associated symptoms of photophobia, phonophobia, osmophobia, and nausea, causing her to retreat to a dark, quiet room and lying down. (R. at 577; see R. at 26.) Plaintiff sought to discontinue amitriptyline. (R. at 577; see R. at 26.)

57. On September 4, 2020, Plaintiff reported to NP Stockdill that she had one headache per week and her condition stabilized but stopped taking amitriptyline due to its ineffectiveness. (R. at 573; see also R. at 26.)

58. On March 4, 2021, Plaintiff reported having two headaches per week and those headaches were slightly worse. (R. at 640, 642, 668; see R. at 26-27.) NP Stockdill prescribed increasing Plaintiff's dosage of Topamax and said Plaintiff could continue to use Tylenol for acute abortive therapy. (R. at 624; see R. at 27.)

59. Plaintiff thus met her burden to establish that her migraine headaches met or equaled the requirements of severity of Listing 11.02B and thus was disabling. Plaintiff produced evidence of frequent headaches over a prolonged period, furnishing detailed symptoms to Drs. Lee-Kwen and Joshi and Ms. Stockdill. Although Plaintiff's migraines improved, they later worsened. Plaintiff tried various medication (ibuprofen, amitriptyline, and Topamax) with varying degrees of success, discontinuing amitriptyline due to its ineffectiveness. (R. at 573.) Although the ALJ recognized these findings (R. at 26-27), he did not conclude that Plaintiff met or exceeded the severity of Listing 11.02B. (Cf. R. at 24.) This is error and warrants remand because Plaintiff established that her migraine headaches met or equaled that Listing.

60. Plaintiff's Motion for Judgment on the Pleadings on this consideration of her migraine headaches is granted. This case is remanded for further proceedings on this issue. This remand, however, does not require the ALJ to seek further evidence from BVS because BVS treated Plaintiff for psychological impairments and not her migraines.

61. Accordingly, having reviewed the ALJ's decision and considered Plaintiff's arguments, this Court remands for the ALJ to determine whether Plaintiff's migraine headaches meet or equals the relevant listing at Step Three of the analysis.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No.6) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:     January 29, 2025
              Buffalo, New York

                                                <u>s/William M. Skretny</u>
                                                WILLIAM M. SKRETNY
                                                United States District Judge